**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 17, 2009

Charles R. Fulbruge III
Clerk

No. 08-50581

LULAC OF TEXAS; MEXICAN AMERICAN BAR ASSOCIATION OF
HOUSTON, TEXAS (MABAH); ANGELA GARCIA; BERNARDO J GARCIA;
ELVIRA RIOS; ROGER ROCHA; ROSARIO VERA; RAYMUNDO VELARDE

Plaintiffs-Appellants

v.

STATE OF TEXAS; TEXAS DEMOCRATIC PARTY

Defendants-Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:08-cv-00389

Before REAVLEY, BARKSDALE, and GARZA, Circuit Judges.

PER CURIAM:[*]

Plaintiffs-Appellants LULAC of Texas, the Mexican American Bar Association of Houston, Texas, and several individuals who reside in various Texas senatorial districts appeal from the dismissal by a single-judge district court of their claims under Section 5 of the Voting Rights Act against Defendants-Appellees the State of Texas and the Texas Democratic Party (the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

"Party"), contending that the judge should have referred their claims to a three-judge court. Plaintiffs' suit challenges the Party's method of allocating delegates to its nominating conventions based on raw voter turnout, a procedure that was not precleared by the United States Attorney General or the District Court for the District of Columbia. Reviewing the dismissal *de novo*, *see In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), we AFFIRM the dismissal for the State, REVERSE the dismissal for the Party, and REMAND for the following reasons:

1.  We agree with Plaintiffs that the district judge's finding of no discrimination against Latino voters resulting from the Party's delegate-allocation method does not support dismissal of their § 5 claim against the Party. Section 5 preclearance actions generally must be resolved by a three-judge court, whose decision is appealable only to the Supreme Court. *See* 42 U.S.C. § 1973c; *LULAC v. Texas*, 113 F.3d 53, 55 (5th Cir. 1997) (per curiam). Since the challenged practice was not precleared, the inquiry by a three-judge district court is limited to whether § 5 covers a contested change, and, if so, the appropriate remedy. *Lopez v. Monterey County*, 519 U.S. 9, 23, 117 S. Ct. 340, 349 (1996). The coverage issue turns on: (1) whether the delegate-allocation method is a "'standard, practice, or procedure with respect to voting' within the meaning of § 5," *Dougherty County, Ga., Bd. of Educ. v. White*, 439 U.S. 32, 33–34, 99 S. Ct. 368, 370 (1978); (2) whether the method constitutes a "change" to the covered jurisdiction's baseline, *i.e.*, "the most recent practice that was both precleared and 'in force or effect'—or, absent any change since the jurisdiction's coverage date, the practice that was 'in force or effect' on that date," *Riley v. Kennedy*, — U.S. —, 128 S. Ct. 1970, 1982 (2008) (internal citation omitted); and (3) whether the Party is a "political subdivision" subject to § 5, *Dougherty County*, 439 U.S. at 34, 99 S. Ct. at 370. Thus,

even a three-judge court cannot assess the discriminatory impact of the challenged method; that determination is reserved for the United States Attorney General or the District Court for the District of Columbia. *See Lopez*, 519 U.S. at 23, 117 S. Ct. at 348–49 ("On a complaint alleging failure to preclear election changes under § 5, th[e] [three-judge district] court lacks authority to consider the discriminatory purpose or nature of the changes.").

2.  Nor can dismissal be affirmed on the alternative ground that the Party is not a "political subdivision" subject to § 5's preclearance requirement. When determining whether to convene a three-judge court, a single district judge may dismiss a § 5 claim that is "'wholly insubstantial' and completely without merit, such as where the claim[ ] [is] frivolous, essentially fictitious, or determined by prior case law." *LULAC*, 113 F.3d at 55 (internal citation omitted). As the Party concedes, the Supreme Court has not resolved whether and under what circumstances the Voting Rights Act requires a political party to obtain preclearance of internal party rules, and in fact has extended § 5's requirement to a political party's imposition of a registration fee for delegates to the party's state nominating convention. *See generally Morse v. Republican Party of Va.*, 517 U.S. 186, 116 S. Ct. 1186 (1996) (plurality opinion). Without binding precedent clearly foreclosing Plaintiffs' contention that § 5 applies to the Party's delegate allocation method, it cannot be said that the claim is wholly insubstantial or frivolous. *See Goosby v. Osser*, 409 U.S. 512, 518; 93 S. Ct. 854, 859 (1973) ("A claim is insubstantial only if its soundness so clearly results from the previous decisions of [the Supreme Court] as to foreclose the subject . . . ." (internal quotation marks and citation omitted)); *cf. LaRouche v. Fowler*, 152 F.3d 974, 975–77, 983–86, 998 (D.C. Cir. 1998) (concluding that *Morse* did not clearly and inescapably foreclose

the plaintiff's § 5 challenge to a party rule conditioning eligibility as a presidential nominee on the chairman's determination that the candidate is a bona-fide party member, and reversing its dismissal by a single-judge district court).

3.      For similar reasons, we reject the Party's assertion that its delegate-selection process is not justiciable.  None of the authorities cited by the Party involves a § 5 challenge, and the Party's assertion that its internal procedures are exempt from judicial review merely reprises its contention that the preclearance requirement does not apply to its delegate-allocation rule—an issue that must be resolved by a three-judge district court.

4.      Plaintiffs have not waived their present request for a three-judge court by failing to move for one below.  Section 5 incorporates 28 U.S.C. § 2284, which prescribes, "[a] district court of three judges *shall be convened* when otherwise required by Act of Congress . . . ." 28 U.S.C. § 2284(a) (emphasis added).  We agree with our sister circuits that the term "shall" in § 2284 is mandatory and jurisdictional. *See Kalson v. Paterson*, 542 F.3d 281, 287 (2d Cir. 2008) (apportionment case); *Armour v. Ohio*, 925 F.2d 987, 989 (6th Cir. 1991) (en banc) (same).  Although the 1976 amendment to § 2284 reduced the categories of cases subject to the three-judge requirement, nothing in the legislative history suggests an intent to alter its jurisdictional nature. *See Kalson*, 542 F.3d at 287.  The absence of a formal request for a three-judge court does not constitute waiver.

4.      Lastly, whether Plaintiffs unreasonably delayed their challenge to a procedure adopted by the Party in 1988 arguably affects the appropriate remedy if coverage is found by the three-judge court, but it does not provide grounds for dismissal. *See Brooks v. State Bd. of Elections*, 775 F. Supp. 1470, 1474–75, 1481 (S.D. Ga. 1989) (three-judge court) (per curiam) (concluding that equitable arguments can be considered "only in the

limited context of fashioning an appropriate remedy," and refusing to "equitably preclear" the changes based on laches), *aff'd mem.*, 498 U.S. 916, 111 S. Ct. 288 (1990). Having found no basis in the record supporting the district judge's ruling, we reverse the dismissal of Plaintiffs' § 5 claim against the Party and remand for the convening of a three-judge court.

5. Plaintiffs' § 5 claim against the State for a voting procedure that it neither enacted or administered, however, was properly dismissed. Section 5 states, "[w]henever a [covered] State or political subdivision . . . shall enact or seek to administer any . . . standard, practice, or procedure with respect to voting different from that in force or effect" on the relevant coverage date, "*such State or subdivision*" must obtain preclearance either by instituting an action in the District Court for the District of Columbia, or from the United States Attorney General. § 1973c (emphasis added). The statute plainly imposes a preclearance obligation only on the particular "State or political subdivision" that "enact[s]" or "seek[s] to administer" the disputed change. In this case, the challenged delegate-allocation procedure was enacted and administered by the Party, not the State. Texas law requires the Party to adopt rules, consistent with state law, governing the conduct of its conventions, mandates that such rules be filed with the State, and provides a mechanism for their enforcement. *See* TEX. ELEC. CODE ANN. §§ 163.002; 163.003; 163.005; 163.007. But these provisions do not impute to the State the Party's obligation, if any, to preclear those rules under § 5. We affirm the dismissal of Plaintiffs' wholly insubstantial claim against the State.

AFFIRMED IN PART; REVERSED IN PART; CAUSE REMANDED FOR FURTHER PROCEEDINGS.

EMILIO M. GARZA, concurring in part and dissenting in part.

I concur with the majority's holding that LULAC's Section 5 claim against the Texas Democratic Party should be remanded to a three-judge panel for consideration. However, I respectfully dissent from the majority's affirmance of the district court's dismissal of LULAC's claim against the State of Texas. Because the question of whether the Democratic Party's internal voting procedures can be imputed to the State of Texas is not "'wholly insubstantial' and completely without merit, such as where the claim[] [is] frivolous, essentially fictitious, or determined by prior case law," *LULAC v. Texas*, 113 F.3d 53, 55 (5th Cir. 1997), it should be considered by a three-judge panel.[1]

---

[1] I am unaware of any case in this Circuit or any other dealing with the issue. The Supreme Court's Voting Rights Act jurisprudence does not foreclose the possibility that political party activities may be give rise to some obligation on the part of the state, especially where, as here, state law mandates that the party rules be filed with the state and provides a mechanism of enforcement for those rules. *See* TEX. ELEC. CODE ANN. §§ 163.002, 163.005 (requiring political parties to adopt rules that are consistent with state law); § 163.007 (making political party rules enforceable by writ of mandamus). Thus, while I make no statement as to the merits of this claim, it does not meet the "wholly insubstantial" standard so as to be excluded from remand to a three-judge panel for review.